**ITEK CORPORATION, a Delaware corporation, Plaintiff Below, Appellant,**

v.

**CHICAGO AERIAL INDUSTRIES, INC., a Delaware corporation, Defendant Below, Appellee.**

**ITEK CORPORATION, a Delaware corporation, Plaintiff Below, Appellant,**

v.

**BOURNS, INC., a California corporation, Defendant Below, Appellee.**

Supreme Court of Delaware.

Jan. 19, 1971.

Alexander L. Nichols and Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, and Harold M. Willcox, of Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for appellant.

E. N. Carpenter, II, and Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

These are appeals from judgments entered on a jury's verdict in favor of the defendants, Chicago Aerial Industries, Inc. and Bourns, Inc. The actions are for breach of contract by C.A.I. and for tortious interference by Bourns, Inc. with negotiations between Itek and C.A.I. for the acquisition by Itek of C.A.I.'s business and assets.

This is the second appeal in this controversy. In the first appeal we reversed a summary judgment for C.A.I. by reason of the existence of unresolved material issues of fact. We held that whether or not a binding agreement had been reached between Itek and C.A.I. depended on the effect of a letter of intent jointly executed by the parties. Whether or not a letter of intent may constitute a binding agreement, we held, depends upon the intent of the parties as disclosed by the facts and circumstances. We refer to our opinion in the first appeal, Itek Corporation v. Chicago Aerial Industries, Inc., Del., 248 A. 2d 625, for a fuller statement of the facts and legal issues of the cause.

While the trial below was lengthy and complicated, this appeal brings before us for decision a narrow question concerning the admissibility of expert testimony concerning the significance and effect of a letter of intent executed by the negotiating parties.

Near the end of the lengthy trial, the defendants called two expert witnesses who testified, over objection, concerning the meaning and significance of letters of intent. Itek now argues that the overruling of its objection to this testimony is reversible error.

An investment banker was the first expert. He testified he was familiar with the phrase "letter of intent". He was then asked the function of such an instrument in negotiations for corporate mergers and acquisitions. He answered as follows:

"A letter of intent is to set down on paper the stage that negotiations have reached. It sometimes sets forth guidelines as to further negotiations. It some-

times describes various chores that have to be done by either party pursuant to the negotiations, and occasionally it sets a time limit on the length of time during which negotiations will be carried on, and if they are not successful they will be forgotten after that time limit. It is sometimes known in the trade as a 'hunting license'."

The second expert was a Wall Street lawyer who described a letter of intent as follows:

"A letter of intent is basically the way I would express it an agreement to agree. It is a letter that generally represents —another synonymous word for it is a memorandum of understanding. It means, 'We will sit down and actively and seriously try to come to a firm understanding,' represented by a particular agreement, plan, or reorganization, which would be a merger agreement, purchase agreement, which would embody all the terms of a particular transaction. I think the words 'agreement to agree,' or 'the commencement of formalization of serious negotiations' is the best way I can express it."

Asked if there was a slang phrase for a letter of intent used among lawyers actively engaged in negotiations for corporate combinations, the witness answered, "memorandum of understanding" and "hunting license".

Plaintiff argues that the admission of the above testimony was reversible error because, in effect, these witnesses were instructing the court with respect to the applicable law of the case. Defendants contend that the testimony was properly admitted as an explanation of the technical phrase, "letter of intent", as understood by persons experienced in the business of combining businesses.

■■ Testimony from an expert is inadmissible if it expresses the expert's opinion concerning applicable domestic law. The reason, of course, is that it is exclu-sively within the province of the trial judge to determine issues of domestic law and to instruct the jury concerning them. The rule is the same as the one prohibiting an expert witness from offering an opinion of fact, which is the jury's exclusive function to determine. 31 Am.Jur.2d, Expert and Opinion Evidence § 69; 32 C.J.S. Evidence § 546(86); 7 Wigmore, Evidence (3rd Ed.) § 1952.

■ While an expert witness may not impinge upon the domain of the trial judge, it is nevertheless entirely proper for him to define an uncommon term according to the customs and usages of the trade or business with which he is familiar. 31 Am. Jur.2d, Expert and Opinion Evidence § 171; 32 C.J.S., Evidence § 546(76). Nor does it make any difference as to admissibility whether or not the expert witness happens to be a lawyer. Isaak v. Journey, 52 Idaho 392, 15 P.2d 1069 (1932); Automobile Underwriters, Inc. v. Smith, 131 Ind.App. 454, 166 N.E.2d 341, 167 N.E.2d 882 (1960).

■ We hold the admission of this testimony not to be reversible error. If any doubt existed in the minds of the jurors as to the purpose of the testimony, subsequent clarifications dispelled such doubt. During cross-examination the lawyer-expert witness admitted that the actual intent of the parties is the important consideration in determining whether a binding agreement existed. Furthermore, the judge, in his instruction to the jury, made the matter entirely clear. His instruction was as follows:

"There has been some testimony about the meaning and use of letters of intent. I am not going to go over that testimony in detail with you, but I am going to say that a letter of intent is sometimes an enforceable legal instrument and sometimes it is not. It all depends on the intention of the parties as shown from the words of the instrument and from what the parties said and did in connection with executing the instrument. You

are instructed that the legal effect of any instrument in this case depends on the facts as you find them and the law as given by me and not upon the legal conclusion stated by any witness."

Repeatedly throughout his instruction, the judge stated that whether or not there was a binding agreement depended upon the intent of the parties. We think it important also that the plaintiff made no objection to the instruction dealing with this matter.

Plaintiff also contends that its right to cross-examine the lawyer-expert witness was unduly restricted. The scope of cross-examination is a matter within the sound discretion of the trial judge and will be disturbed only in a case of clear abuse. It appears from the record that the plaintiff was afforded great latitude during its cross-examination. There is no adequate reason to hold that the trial court abused its discretion in this regard.

Plaintiff also challenges the admission of certain testimony of the expert witnesses elicited during its cross-examination of the lawyer. However, a party may not be heard to complain of a responsive answer to a question which he himself asked in cross-examination. 98 C.J.S. Witnesses § 375; 1 Wigmore, Evidence (3rd Ed.) § 18(D).

The judgments below are affirmed.